Johnson v. Houghton.

*McDonald* and *Roache,* for the appellee.

---

JOHNSON v. HOUGHTON.

On the assignment of a land office certificate of the location of land, there is no implied warranty of title.

In a matter embracing neither fraud nor covenant, the purchaser acts at his own risk, and voluntarily foregoes any remedy, if the title should fail. The rule, *caveat emptor,* applies.

Where a transfer of real estate, or any interest therein, is defective in form, the transferree can not, for that reason alone, recover back

the money paid therefor, but must first demand a correction of the error in the transfer.

A contract can not, either for mistake or fraud, be rescinded in part, and affirmed in part, but must be rescinded *in toto*, or not at all.

APPEAL from the *De Kalb* Circuit Court.

WORDEN, J.—On the 2d of April, 1859, *Nathan Johnson* sold and conveyed to *Obadiah C. Houghton* and *Amos B. Park* certain real estate, in *De Kalb* county, for the consideration, as stated in the deed, of thirty-two hundred dollars. Some money was paid in part for the consideration, and, among other things, *Johnson* took from *Houghton* an assignment of a land-office certificate of location, but for what amount the certificate was received the record does not disclose. The title to the land, covered by the certificate, failed, and *Johnson* brought this suit against *Houghton*, to recover the value of the land named in the certificate. Trial by the Court; verdict and judgment for the defendant.

The certificate in question, and the assignment thereon, are as follow :

"Military bounty land, act of March 3, 1855, register's office, *Plattsburg*, July 30, 1857.

"Military land warrant, No.—, in the name of——— has this day been located by *Obadiah C. Houghton*, upon the s. ½ of s. w. ¼ of section 22, and n. w. ¼ of n. w. quarter of section 27, in township 64, of range 28, subject to any pre-emption claim which may be filed for said land, within forty days from this date. Contents of tract located, 120 acres.

"W. TURNER, *Register*."

(ASSIGNMENT.)

"For value received, I, *Obadiah C. Houghton*, to whom the within certificate of location was issued, do hereby sell and assign unto *Nathan Johnson*, and to his heirs and assigns forever, the said certificate of location, and the warrant and

Johnson *v.* Houghton.

land therein described, and authorize him to receive the patent therefor. Witness my hand and seal, this 2d day of April, 1859. "OBADIAH C. HOUGHTON, [*seal.*]"

This assignment was duly acknowledged before a notary public.

It was agreed upon the trial, that the land embraced in the certificate lay in the State of *Missouri;* that it was preempted by one *George W. Kelly*, previous to the 30th of July, 1857, in whose possession it has been ever since, and that the Government has approved his pre-emption; that at the time of the assignment neither the plaintiff nor the defendant had any actual notice that the land had been pre-empted, or that any other person had any claim to it; that at the date of the assignment the land was worth four hundred and fifty dollars, and that the warrant upon which the location was made was worth one hundred dollars.

It was also shown by the evidence, that, pending the negotiations, *Houghton* declined to give any warranty for the land, or make a warranty deed, saying that he knew nothing about it, except what appeared on the certificate. Before this suit was commenced, *Johnson* executed a reassignment of the certificate to *Houghton*, and tendered it back to him.

These are believed to be the material facts of the case.

The principal question in the case is, whether any implied warranty of title to the land attaches to the assignment? We think not. There are several reasons which, taken conjointly, if not separately, render it clear that no warranty of title can be implied. There are no covenants in the assignment. The assignment is a completely executed contract. Nothing remains to be performed *in futuro.* Now, had the paper been a regular deed of conveyance, without covenants, instead of an assignment of the certificate, it is abundantly clear that the failure of title would have furnished no ground to recover back the purchase money, if

paid, or defense to an action to recover it, if unpaid. Rawle on Cov., p. 614, (3d ed.). *Laughery* v. *McLean*, 14 Ind. 106. In the latter case, it was said, that "the maxim of *caveat emptor* peculiarly applies in such case. The defendant in error should have taken proper covenants to guaranty his title. In a matter embracing neither fraud nor covenant, the purchaser acts at his own risk, and voluntarily foregoes any remedy, if the title should fail." The principle is equally applicable to the assignment in question.

But, beyond this, the certificate shows on its face, that the rights of the holder were subject to any pre-emption claim that might be filed for the land, within forty days from its date. *Johnson* received the certificate, subject to the contingency. When he bought the certificate, he was notified by the terms of it, that a contingency might arise, which would defeat the location. That contingency, it seems, did arise, and it would seem that he should not now be heard to complain of it. But, still further, it appears that both parties were ignorant of the pre-emption claim. *Houghton* did not profess to know anything about the matter, except from the certificate. He refused to make any warranty. This, shows, clearly enough, that *Johnson* bought upon his own risk. Under such circumstances, an express warranty being refused, it would be an anomaly if the law would imply one. If any analogy is supposed to exist between this case and that of a sale of personal property, that analogy favors the defense, for in the case of a sale of chattels, not in the possession of the seller, the law does not imply a warranty of title. *Lackey* v. *Stouder*, 2 Ind. 376. Here, the land was not in the possession of *Houghton* at the time of the assignment.

But it is claimed that the assignment is void, not being in conformity to the acts of Congress, and, therefore, that the plaintiff is entitled to recover. It is claimed, that two witnesses are necessary to attest an assignment. The act

of March, 1852, (*vide* U. S. Stat. at large, p. 3, vol. 10,) provides, "That all warrants for military bounty lands, which have been, or may hereafter be issued, under any law of the *United States*, and all valid locations of the same, which have been, or may hereafter be made, are hereby declared to be assignable, by deed or instrument of writing, made and executed after the taking effect of this act, according to such form, and pursuant to such regulations, as may be prescribed by the Commissioner of the General Land Office, so as to vest the assignee with all the rights of the original owner of the warrant, or location."

We are not apprised whether the forms and regulations prescribed by the commissioner, as above provided for, require attesting witnesses to an assignment. Nothing on this subject has been shown. The assignment in question being sufficient, on general principles, and *Johnson* having received it, we think it devolves upon him to show that it is not in accordance with the forms and regulations prescribed, if such be the fact. He, having shown nothing on this subject, can not say that the forms and regulations have not been complied with. But there is another conclusive answer to this position. Suppose the assignment is not in accordance with the forms and regulations prescribed, *Johnson* could not, for that reason only, recover of *Houghton* the value of the land, without, at least, having first required him to execute an assignment in accordance with those forms and regulations. Suppose that, at a time when a seal was necessary to a conveyance, A should have sold to B a piece of land, and executed a conveyance, regular in every respect except that the sealing was accidentally omitted, can B, thereupon, sue A for the price of the land, without first demanding a correction of the mistake? We think not. Indeed, his only remedy might be a proceeding to compel such correction. So here, if the assignment lacks any of the requirements of the rules and regulations, *Johnson*

should have applied to *Houghton* to correct the error, before bringing suit for the value of the land.

It is also urged, that there was a mutual mistake, in both parties, as to the title, which would justify a rescision. *Martin* v. *McCormick*, 4 Seld. 331, is a strong case, tending to uphold this view. But we doubt whether, in view of the whole case, the mistake, as to the title, was such an one as to justify a rescision. On the supposition, however, that the mistake would justify a rescision, still, *Johnson* has not put himself in a position to rescind. Indeed, he is not trying to rescind the contract. A contract can not, for either mistake or fraud, be rescinded in part, and affirmed in part. It must be rescinded *in toto*, or not at all. *Rinker* v. *Sharp*, 5 Blackf. 185. *Gatling* v. *Newell*, 9 Ind. 572. Here, *Johnson* retains the money and whatever other consideration he received for the land conveyed by him to *Houghton* and *Parks*, and seeks to recover the value of the land covered by the certificate of location. The suit, in short, is not based, at all, upon the supposed right to rescind the contract.

There is no error in the record, hence the judgment must be affirmed.

*Per Curiam.*—The judgment is affirmed, with costs.

*J. A. Fay*, for the appellant.

*W. H. Withers* and *John Morris*, for the appellee.