## WELCH v. McGRATH.

1. **Mechanic's Lien:** STATEMENT FOR: FORM OF. Under section 1851 of the Revision, as amended by chapter 111, of the laws of 1862, it was *not necessary, in a statement for a mechanic's lien, to set forth the name* of the owner of the property at the time the lien was filed, accordingly it was *held* that, where the owner who had incurred the indebtedness died before the filing of the lien, it was sufficient, as against the heirs, to file the lien against the *estate* of the deceased owner.

2. ———: FORECLOSURE OF: PARTIES TO. In an action to foreclose a mechanic's lien, under sections 1858 and 1859 of the Revision, where the *owner who had incurred the indebtedness died before the suit was brought*, it was not necessary to make the heirs parties to the suit. A foreclosure against the administrator of the deceased party is just as binding upon his heirs or devisees as would have been a foreclosure against himself during his life time.

3. ———: ———: STATUTE OF LIMITATIONS WAIVED. Where, in an action to foreclose a mechanic's lien, there were proper parties defendant, who might have plead the statute of limitations, but did not, *held* that the defense was waived, and that it could not afterwards be interposed in a collateral proceeding to defeat the title acquired by the foreclosure proceedings.

4. **Administrator**: RIGHT TO ACQUIRE TITLE TO PROPERTY OF DECEDENT. Where the property of decedent was sold at judicial sale, *held* that the administratrix who was decendent's widow, was not, on account of her fiduciary relation to the estate, precluded from taking to herself an assignment of the certificate of purchase from a third party, and that a deed made to her thereunder gave her as good a title to the property as against the heirs as such a deed would have given to her assignor.

On re-hearing, the 4th point was affirmed, and the following additional points were made in argument.

5. ——: ——. In the absence of fraud, one who, as a trustee, has sold an estate, may afterwards repurchase it for himself.

6. ——: ——. A purchase by an executor, under an execution against his testator, is not void, but simply voidable at the election of the legatees, exercised within a reasonable time.

7. **Practice**: RELIEF LIMITED BY PLEADINGS. Relief can be granted alone on the case made in the pleadings: Accordingly *held* that, as plaintiff can have relief only by the setting aside of a judicial sale, which sale she has not attacked in her petition, she cannot have the relief demanded in this case.

*Appeal from Des Moines Circuit Court.*

WEDNESDAY, OCTOBER 18.

THE plaintiff alleges in substance in her petition that she is a minor, the adopted child and sole heir of Wm. Welch, deceased; that Wm. Welch died July 27, 1870, seized of lots eighteen and nineteen, in Cameron's addition to the city of Burlington, which property was the homestead of decedent and of this plaintiff, his daughter, and has ever since been used by plaintiff as her homestead, with her adopted mother, Ann McGrevy, the former widow of said Welch, deceased. That said Ann Welch, widow, afterward married one Hugh McGrevy, but continued to occupy said lots and the house as her homestead, and that of this plaintiff. That the defendant, Mary McGrath, claims to have some right or interest in said lots, founded upon the fact that, about May 20, 1874, said Ann McGrevy, former widow of Wm. Welch, and Hugh McGrevy, her husband, made a mortgage upon said property to the defendant, upon which a decree of foreclosure was entered, execution was issued, and a sale was made to the de-

fendant. That the said Ann and Hugh McGrevy had no mortgageable interest in, nor right to convey said property, and that the mortgage and sale pursuant thereto are void as against the heirship, title and homestead rights of the plaintiff. The plaintiff prays that the decree of foreclosure and proceedings thereunder may be set aside, and plaintiff's title confirmed. The defendant filed answer, admitting that plaintiff is the adopted child of Wm. Welch, deceased, but denying that the property in question was his homestead, and denying the other main allegations in the petition, and averring that in the year 1874 Ann McGrevy became the absolute owner of the property described; that defendant loaned money to her thereon, and that the mortgage given therefor has been foreclosed, and the land sold thereunder, and that she holds the sheriff's certificate. The defendant also filed a cross-bill setforth an abstract of title, showing the following facts:

1. That in October, 1872, George Jefferys commenced an action in the Des Moines Circuit Court, against Ann Welch and Charles O'Brien, to foreclose a mechanic's lien on the real estate in controversy. Original notice was personally served on both defendants, October 28, 1872; both defendants answered November 15, 1872, and judgment in favor of plaintiff was rendered, February 21, 1873, for fifty-nine dollars and fifty-seven cents, and a mechanic's lien established.

2. On the above judgment the property was sold May 13, 1873, to J. W. Heisey and Chas. O'Brien. The certificate of purchase was assigned to Mary McGrath and by her to Ann McGrevy, to whom a sheriff's deed was duly executed, which was filed for record and recorded May 13, 1874.

3. On the 15th of May, 1874, Ann McGrevy and her husband executed to the defendant, Mary McGrath, a mortgage on said lots, to secure the sum of $400, which mortgage was duly foreclosed May 30, 1878, and upon execution issued thereunder the property was sold to Mary McGrath, August 13, 1878. The cross-bill prays that the property be quieted in defendant.

To this cross bill the plaintiff filed a replication as follows:

"1.  Averring that the title to said property, derived by and through Geo. Jefferys, is wholly null and void as to this plaintiff, for the reason that the work for which said lien was claimed was all done and completed on a contract prior to the second day of April, 1870, before the death of said Wm. Welch; that said Welch died July 27, 1870, leaving plaintiff, a duly adopted child, sole heir-at-law of said Wm. Welch; that no claim for a lien thereunder was filed until April 16, 1872, more than two years after the completion of the work, and that said claim for a lien was not filed against this plaintiff, as owner of said property, but against "Wm. Welch's estate," and no other lien or claim was filed by him.  [Exhibit showing claim filed with clerk as part of the reply.]

"No notice of the claim for mechanics' lien was ever served upon plaintiff, either in person or on her guardian.

"2.  The petition for the enforcement of said lien was not filed until October 26, 1872, more than two and one half years after the work was done, and more than two years after said Welch's death.  And in such proceedings for foreclosure of said mechanics' lien, this plaintiff was in no way made a party, or notified thereof; that said proceedings were only against Charles O'Brien and Ann Welch, as administrators of said Wm. Welch's estate; and upon this proceeding to foreclose said mechanic's lien *alone* the defendant's title above set up is based.

"Therefore, all of said proceedings to establish said mechanics' lien, and the sale thereunder, were insufficient to divest the plaintiff's title, she being at the time a minor only six years old, and did not estop her now asserting her right."

A copy of the petition entitled "lien foreclosure," is annexed as an exhibit.

"3.  The Ann Welch mentioned in defendant's abstract, to whom the sheriff's deed was made, is the same Ann Welch who was administratrix of the estate of Wm. Welch, deceased, and who had a homestead interest in the said realty, and was

incapacitated by reason of her said relationship to said estate and the plaintiff and the property, to acquire a title thereto adverse to plaintiff, and the defendant, McGrath, had full notice of all said facts when she took the mortgage."

All other allegation of cross bill are denied.

Exhibit claim against Wm. Welch's estate in favor of George Jefferys, 1870, April 2, showing balance due of $58.57.

"Sworn to and marked filed on the 16th day of April, 1872.

Wm. Garrett, *Clerk, D. C.*"

EXHIBIT.

"Lien foreclosure" sets forth petition of George Jefferys to foreclosure above lien as follows:

GEORGE JEFFERYS,

v.

ANN WELCH AND CHARLES O'BRIEN,
*Administrators of the estate of Wm. Welch, deceased.*

Petition in usual form, claiming foreclosure of above lien claim, marked "filed October 26, 1872.

Wm. Garrett, *Clerk C. C.*"

EXHIBIT.

Notice in above entitled cause, addressed to said Ann Welch and Charles O'Brien, as administrators of Wm. Welch's estate, to a term of Circuit Court to be held November 11, 1872.

To this replication the defendant demurred as follows:

"1. The facts stated constitute no defense to said cross-bill.

"2. The fact that the mechanic's lien of Jefferys was not filed till after the death of Wm. Welch, is no defense.

"3. The plaintiff is estopped by the judgment and decree establishing and foreclosing the Jefferys mechanic's lien, from denying that he, Jefferys, was entitled to such lien.

"4. No facts are shown to justify this court in interfering with the title which defendant has asserted in her cross-bill.

"5. Ann Welch's demanding that the property be sold,

subject to redemption, is immaterial. She not having offered to redeem.

"6. The facts in defendant's cross bill show that Ann Welch at the time she took the sheriff's deed, was not acting in a fiduciary capacity."

The court sustained this demurrer. The plaintiff declined to further plead, and the court decreed that the defendant is the owner of the property in controversy, and entitled to a deed from the sheriff therefor. The plaintiff appeals.

*P. Henry Smyth, T. W. Newman* and *D. Y. Overton,* for appellant.

*Hall & Huston* and *T. J. Trulock,* for appellee.

DAY, J.—I. The appellant claims that the lien, to be valid, should have been claimed against the owners of the property at the time the lien was filed, and not against the estate of William Welch. The appellant relies upon *Robbins v. Burns,* 34 N. J. Law, 322. In that case it was held that, where the owner of the building on which the lien was claimed died before the lien was filed, the claim for a lien should have been filed against the parties who were owners by inheritance at the time the lien was claimed, and not against the executors of the former owners.

2. MECHANIC'S lien: statement for: form of.

The decision was based upon the peculiar provisions of the New Jersey statute, which requires that the lien claim shall contain, amongst other things, the name of the owner or owners of the land upon which the lien is claimed. The law in force at the time this lien was claimed was section 1851 of the Revision of 1860, as amended by Chapter 111 of the Ninth General Assembly, and was as follows: "It shall be the duty of every person, except as has been provided for a sub-contractor, who wishes to avail himself, of the provisions of this chapter, to file with the clerk of the District Court of the county in which the building, erection, or other improvement to be charged with the lien is situated, and within

ninety days after all the things aforesaid shall have been furnished, or the work or labor done or performed, a just and true account of the demand due or owing to him after allowing all credits, and containing a correct description of the property to be charged with said lien, and verified by affidavit. But the failure to file the claim, account, settlement, or demand in the time named in this section and in section 1874, shall not operate to defeat the claim or demand, nor the lien of the person supplying the labor or material, as against the owner, nor the contractor, nor as against any one except purchasers or incumbrancers, without notice, whose rights accrued after the ninety days and before the account, or settlement, or claim, or lien is filed."

This statute does not, as does the New Jersey statute, require that the claim for a lien shall contain a statement of the name of the owner of the property against which the lien is claimed. The statute simply requires that the party claiming the lien shall file a just and true account of the demand owing to him, containing a correct description of the property to be charged with the lien. When the person against whom the claim originated is dead, the proper course, we think, in view of the provisions of the statute which we have cited, and the provisions of section 1857 of the Revision, is to make out the account for the demand due, against the estate which is liable for its payment, and not against the heirs, who are not liable for it. We are not authorized to hold, under the provisions of the statute cited, that the claim for a lien should contain the name of any other party than the one who owes the debt. It is claimed, however, that it is necessarily implied in section 1852 of the Revision, that the claim for a lien shall contain the name of the owner of the property at the time the lien is filed. This section provides as follows: "It shall be the duty of the clerk of the District Court to indorse upon every account the date of its filing, and make an abstract thereof in a book by him to be kept for that purpose and properly indexed, containing the date of its

filing, the name of the person laying or imposing the lien, the amount of said lien, the name of the person against whose property the lien is filed, and a description of the property to be charged with the same." Unless the person against whom the account is filed had some interest in the property when the lien arose, or when the claim therefor was filed, the lien would be unavailing. This section assumes that the person against whom the claim is filed has, or had, some interest in the property upon which the lien could operate.

The requirement that the clerk's abstract shall contain the name of the person against whose property the lien is filed, really amounts to no more than that it shall contain the name of the person against whom the account is filed, and a claim for a lien is made. If the legislature intended that the statement for a lien should contain the name of the owner of the property at the time the lien is filed, it is incredible that section 1851 should remain altogether silent respecting it, and that the requirements should be left to be inferred from the provisions of another section having no reference to what the statement should contain, but simply prescribing the duties of the clerk in relation thereto.

II. It is claimed that the foreclosure of the lien, and all the proceedings subsequent thereto, are void, as to the plaint-

2. ——— : fore-  iff, because she was not made a party to the fore-
closure of :
parties to.    closure. The foreclosure proceeding was had against the administrator of the estate of William Welch, deceased. The provisions of the statute upon this question are contained in the Revision, and are as follows:

"Sec. 1858. In all suits under this act, the parties to the contract shall, and all other persons interested in the matter in controversy, and in the property charged with the lien may, be made parties, but such as are not made parties shall not be bound by any such proceedings."

"Sec. 1859. In case of the death of any of the parties specified in the immediately preceding section, whether be-

fore or after suit brought, the executor or administrator of such deceased party shall be made plaintiff or defendant as the case may require, and it shall not be necessary to make the heirs or devisees of such deceased persons parties to such suit."

William Welch was a party to the contract, and, if he had been living at the time the suit was commenced he would have been a necessary party. He died, however, before the suit was commenced and the plaintiff became one of the heirs. Under section 1859, the administrators of the estate of William Welch became proper parties defendant, and it was not necessary to make the heirs parties. It is said that, under section 1858, persons interested in the property charged with the lien not made parties, are not bound by the proceedings. But section 1858 refers in this provision to all other parties than the parties to the contract. When a party to the contract dies, his administrator or executor becomes his representative as to all matters connected with the suit, and by express provision of the statute, it is not necessary to make the heirs parties. A foreclosure against the executor or administrator of a deceased party to the contract is just as binding upon his heirs or devisees, as would have been a foreclosure against the party himself during his lifetime.

This case is not like *Gates v. Ballou*, 56 Iowa, 741. In that case the land on which the lien existed was sold before the action to foreclose the lien was commenced. The statute upon which this decision is based does not apply to that case.

III. The account against William Welch matured April 2, 1870. The claim for a lien was filed April 16, 1872.

3. ——: ——: The action to foreclose the lien, was not commenced until October 26th, 1872, which was two years and nearly seven months from the time the account matured. The reply alleges this fact against the sufficiency of the title acquired under the lien foreclosure. As we have seen, the proper parties were made to the foreclosure proceeding. The decree entered in that proceeding

<span style="font-variant: small-caps;">statute of limitations waived.</span>

is binding until set aside in the proper manner. The defendants could waive the statute of limitations, and having failed to interpose it at the proper time, it cannot be made available now.

IV. The plaintiff's replication alleges that Ann Welch, (McGrevy) mentioned in defendant's abstract, to whom the sheriff's deed was made, is the same Ann Welch who was administratrix of Wm. Welch, deceased, and who had a homestead interest in the said realty, and was incapacitated by reason of her said relationship to said estate and the plaintiff and the property to acquire a title thereto adverse to the plaintiff. The abstract of title set forth in the defendant's cross-bill, and the correctness of which is not denied, shows that the property was sold at sheriff's sale to J. W. Heisey and Charles O'Brien, who assigned the certificate of purchase to Mary McGrath, who assigned the certificate to Ann McGrevy (Welch). Ann McGrevy did not purchase the property at the sheriff's sale, but took an assignment of the certificate of purchase. Although Charles O'Brien was one of the administrators of Welch's estate the replication does not base the alleged invalidity of the defendant's title upon the ground that O'Brien could not purchase the property in connection with Heisey, at the sheriff's sale. The point relied upon in this replication is, that Ann McGrevy (Welch) stood in such a fiduciary relation to the estate that she could not purchase the property. She took an assignment, however, from one whose title is not impeached, and notwithstanding her fiduciary relation, acquired as good a title as her assignor.

The demurrer to the plaintiff's replication was properly sustained.

AFFIRMED.

<div style="margin-left:2em; font-size:smaller">
5. ADMINIS-
TRATOR:right
to acquire title
to property of
decedent.
</div>

OPINION ON REHEARING.

DAY, J.—Upon the petition of plaintiff, a rehearing was granted upon the 4th point of the foregoing opinion. It is insisted that Ann McGrevy stood in such a fiduciary relation

to the property in question that she could not acquire a good title, even though purchased from one who could acquire a good title. The authorities cited by plaintiff's attorney do not, as we understand them, sustain this position. The case of *Silverthorn v. McKinster*, 12 Pa. St., 67, is directly in point in support of the opposite doctrine.

That was a case where executors, under a power given to sell lands, sold to one Burns, and Silverthorn, one of the executors, afterward purchased from Burns. The court say: "As then, Burns was, by the sale, invested with an estate recognized by our laws, there was nothing to hinder him from selling and conveying it to whomsoever he pleased. Nor is there anything in the law, or the transaction itself, to prohibit Isaac Silverthorn from becoming the purchaser.

"There is no suggestion of *mala fides* in the sale made by the executors of Burns, and it is clear that, in the absence of fraud, one, who has sold an estate as trustee, may afterwards fairly repurchase it for himself. *Painter v. Henderson*, 7 Barr., 48."

It is further insisted that Ann McGrevy, being found in possession of the title, the burden is thrown upon her to show that she acquired her title from a *bona fide* purchaser. The abstract of title set forth by the defendant in her answer shows that the property in controversy was sold under execution to J. W. Heisey and Charles O'Brien, who assigned the certificate of purchase to Mary McGrath, and she to Ann McGrevy. From the exhibits attached to the replication it appears that Charles O'Brien was one of the administrators of the estate of William Welch, deceased. In *Fleming v. Foran*, 12 Ga., 594, it is held that an executor cannot become the purchaser of land sold under execution against his testator, but that the sale will be set aside on the application of the legatees, provided such application be made in a reasonable time, otherwise the right will be considered waived or abandoned. The reasoning adopted in this opinion is quite satis-

factory, and the rule established is, we think, the proper one. See also *Spindle v. Atkinson,* 3 Ind., 410.

Under the rule recognized in *Fleming v. Foran, supra,* a purchase by an executor under an execution against his tes-

6. —: ——. tator is not void, but simply voidable, at the election of the legatees, exercised within a reasonable time. Now, from a reference to the petition in this case, it appears that the execution sale to Heisey and O'Brien is not attacked. No effort is made to set it aside. The petition simply alleges that Ann and Hugh McGrevy had no mortgageable interest in the property, and that the mortgage and the sale pursuant thereto are void, and the petition, referring to the decree of foreclosure of the mortgage, prays that the decree and the proceedings thereunder may be set aside. In the application also, no reference is made to the purchase at execution sale by Heisey and O'Brien. It is simply alleged that Ann Welch by reason of her relationship to the estate and the parties, was incapacitated to acquire a title to the property adverse to the plaintiff. The theory of both the petition and the replication seems to be that, without reference to any illegality in the purchase of Heisey and O'Brien, Ann Welch, stood in such fiduciary relation to the property that she could not through any one acquire a good title to the property. This position we have shown to be incorrect. We need not speculate upon what the result might have been if the plaintiff had alleged the invalidity of the purchase at execution sale by Heisey and O'Brien, and had sought to set that aside. Relief can be granted plaintiff alone upon the case made in her pleadings.

The fact, appearing in defendant's answer, that she acquired title by assignment from Heisey and O'Brien, does not show her title to be invalid, for the interest acquired by Heisey and O'Brien was voidable only at the election of plaintiff, and must stand until she asks to have it set aside. The court cannot set aside the sale to Heisey and O'Brien, unless plaintiff asks that relief. The mechanic's

7. PRACTICE:
relief limited
by plead-
ings.

lien and the judgment thereon being affirmed, it may be that plaintiff would not desire to have the sale set aside and the property resold. Without the setting aside of the sale to Heisey and O'Brien, the plaintiff can have no relief, and the plaintiff nowhere in her pleadings asks this relief. The former opinion is adhered to.

AFFIRMED.