(Decided 17th November, 1892.)

---

THE MARYLAND BRICK COMPANY, OF BALTIMORE CITY *vs.* WILLIAM J. SPILMAN, and others.

*Mechanics' lien—Continuous and Entire contract—Waiver of Lien—Art. 63, sec. 3, of the Code—Errors in Account.*

Where a contract is made to furnish continuously under one entire contract, all the bricks necessary to the erection of a number of contiguous houses, the lien of the material-man attaches to all the houses; and under such contract it can in no event become important how many bricks went into one building, or whether more went into one building than into another.

Nor is it necessary, to entitle the material man to maintain his lien, that he should establish the fact that the bricks were actually used in the erection of the buildings, provided it be shown that under his contract with the owner he had delivered the bricks, to be used in the erection of said buildings.

But until he has supplied the bricks requisite for the construction of said buildings he will not be entitled to, and cannot claim, a lien, as the contract was entire and cannot be made available by part performance.

22                    v. 76.

Maryland Brick Co. *vs.* Spilman.

Under the contract certain mortgages were to be given as collateral security for the payment of part of the bricks to be furnished, and a third party was to guarantee the payment for another part. HELD:

1st. That under the provisions of the Code, Art. 63, sec. 3, relating to mechanics' liens, the amount paid by the guarantor, and the amount secured by the mortgages, could have, under the contract, no other effect than to reduce the gross amount due for the bricks furnished.

2nd. That there was nothing in the terms of such contract inconsistent with the existence of the lien, nor was there anything in the contract which suggested an express or even an implied waiver of the lien.

Parties may contract as they think proper respecting the manner in which payment for materials may be made, and they will not be considered as having waived their lien, unless they shall have expressly agreed to such terms as are inconsistent with the existence or enforcement of the lien, in which event the lien is expressly waived by the legal effect of such contract.

Where a bill is filed for the enforcement of a mechanics' lien the plaintiff's right to relief is not affected by errors in his account, as such errors can be corrected when the case reaches the auditor, whose duty it is to state a correct account.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from the decree of the Court below (DENNIS, J.) dismissing the bill of complaint. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, BRYAN, FOWLER, ROBERTS, and McSHERRY, J.

*N. P. Bond,* (with whom were *Howard Munnikhuysen,* and *Robert D. Morrison,* on the brief,) for the appellant.

*Richard Bernard,* (with whom was *Fielder C. Slingluff,* on the brief,) for the appellees.

Maryland Brick Co. *vs.* Spilman,

ROBERTS, J., delivered the opinion of the Court.

The bill of complaint filed in this cause seeks the enforcement of a mechanics' lien for bricks used in the erection of certain houses in the City of Baltimore. The testimony shows that sometime in the month of October, 1883, Charles W. Rockafeller visited the office of the appellant and stated that he and William J. Spilman were negotiating for the purchase from George R. Clark of certain lots of ground in Baltimore for the purpose of building thereon forty-seven houses. The price to be charged for the bricks and the quantity of bricks to be furnished were there agreed upon. The appellant also agreed to accept said Clark's guarantee for five thousand dollars' worth of said bricks, and also to take three mortgages, each for the sum of one thousand dollars, as collateral security for the payment *pro tanto*, for said bricks, and to give a reasonable time within which to pay the balance due thereon. In consequence of financial reasons, not disclosed, the lease was executed to Spilman instead of Rockafeller, and thereupon the appellant commenced and continued the delivery of the bricks to Spilman, until the completion of the building of said forty-seven houses. The bricks, from the beginning, in every instance save one,—where a small quantity, less than thirteen dollars' worth,—were furnished and charged to Spilman, who was the owner of the property, whereon the buildings were in course of erection. On the 24th of September, 1884, there was due the appellant for bricks furnished and delivered to the appellee, Spilman, to be used in the erection of said forty-seven houses, the sum of $8,623.93, to secure the payment of which the appellant laid its lien, and apportioned the same among the several houses to be affected by it. Subsequently the appellant was paid and satisfied the several sums of money due it under said lien on twenty-six of said buildings, and the same were released from the

operation of said lien, so that there remained an unpaid balance on twenty-one of said buildings, which has not been released, and the contention on the part of the appellant is, that the said twenty-one buildings are subject to said lien and liable for the payment of said balance. On the 14th of November, 1887, the appellant filed its bill of complaint to enforce the payment of the three thousand five hundred and ten dollars, with interest thereon from the 24th of September, 1884, which it claimed as the balance due for said bricks.

Spilman answered the bill of complaint, and admitted that the several conveyances of property were made and recorded as alleged in said bill, and that the lien claimed was filed as therein stated, and further admitted that the appellant furnished certain materials, which were used in the erection and construction of said buildings, but denied that the sum claimed was due and owing as alleged in the bill, and further stated that a large part of said lien was improperly charged against said improvements, said bricks being sold and charged to and upon the sole faith and credit of George R. Clark, who had no connection with said buildings as owner, builder or contractor, and that the various payments made on account of the appellant's claim have been improperly credited. Clark's answer is substantially the same with Spilman's. The only witness who testified before the examiner, and whose testimony appears in the record is, Mr. George M. Bokee, the president of the appellant. If any doubt could reasonably be entertained as to the nature and character of the contract for the sale and delivery of said bricks, it is entirely removed by the testimony, which shows conclusively that the intention of the parties was that the bricks were to be furnished continuously, and under one entire contract. Mr. Bokee, in his examination in chief, in answer to the twenty-first interrogatory, says: "When we agreed to sell the

bricks to William J. Spilman, the lot of ground bounded north by Lauvale street, on the south by a road, since named 'Federal street,' on the west by Barclay street, and on the east by what is now called 'Carter Alley,' was entirely vacant and comprised one block of ground. (Pinkney Place was opened through the same afterwards running east and west, by Mr. George R. Clark.) The bricks were sold for the entire improvement, for the erection of forty-seven houses, and it is not unusual to construct four rows at the same time, by the same builder.'' Which being read in connection with Mr. Bokee's answer to the second and third interrogatories in chief, heretofore referred to in the statement of the testimony, ascertains with certainty the real contract existing between the parties for the sale and delivery of said bricks. The appellees have not sought to deny the terms of the contract, so far as the testimony shows, simply contenting themselves with the cross-examination of Mr. Bokee, who only emphasized that which he had previously stated in his examination in chief. The answer to the bill corroborates the fact that certain materials were furnished by the plaintiff in and about the erection and construction of the improvements upon the property mentioned in the bill. We come now to the construction of the law applicable to a contract of this character, which we decide to be a contract to furnish continuously under an entire contract, all the bricks necessary to the erection of the said forty-seven houses. The question is not a new one. It has been repeatedly considered by the Courts of the other States, as well as by the United States Supreme Court, and there seems to be so far as we have ascertained, almost entire uniformity in the conclusion which has been attained. In *Lyon & Gribble vs. Logan,* 68 *Texas,* 525, Stayton, J., delivering the opinion of the Court, says: ''When materials have been furnished under a single

contract for buildings erected on two or more contiguous lots, owned by the person to whom the material is furnished, we see no reason why the lien should not attach to all the lots; and it would be exceedingly unreasonable to require the person who furnishes material, in such a case, to ascertain how much of the material is placed in each house. This is a matter under the control of the owner of the property improved, and, if he does not see proper to make separate contracts for material to be used on each lot, he cannot be heard to say that a lien does not attach upon all the lots upon which the material is used. This rule operates no hardship on the owner of the property, or persons who purchase from him with notice of the lien. If the former, owning contiguous lots, desires to affect them severally with a lien only for the material furnished for buildings or other improvements on each, he should so make his contract as to enable the material-man to know how much of his debt each lot is responsible for. So long as he treats such lots as one property, by making one contract for material to be used on all of them, without designating what part of the material is to be used on one lot or another, so long may the material-man treat the lots as one piece of property in fixing his lien upon it. A purchaser buys with his eyes open, and if he voluntarily purchases property which he knows is encumbered, he cannot complain if it is subjected, in his hands, to the payment of the debt for which its former owner has made it responsible."

The Supreme Court in *Phillips vs. Gilbert*, 101 *U. S.*, 725, Mr. Justice BRADLEY speaking for the Court says, "We are satisfied, therefore, that when this suit was commenced the complainant's lien was good against the property for the amount found by the jury to be due to him, unless it was void for the reason stated in the demurrer of Boughton and Moore; namely, its being claimed on the whole row of buildings, and not on the buildings

separately. We think, however, there is nothing in this objection. The contract was one, and related to the row as an entirety, and not to the particular buildings separately. The whole row was a building, within the meaning of the law, from having been united by the parties in one contract, as one general piece of work.'' To like effect will be found the following cases: *Chadbourn vs. Williams and Mechanics Building & Loan Asso.*, 71 *N. C.*, 448; *Marston vs. Kenyon*, 44 *Conn.*, 350; *Batchelder vs. Rand*, 117 *Mass.*, 176; *Paine vs. Bonney*, 4 *E. D. Smith*, 750; *Moran vs. Chase*, 52 *N. Y.*, 346; *Carpenter vs. Leonard*, 5 *Minn.*, 119; *Orr, et al. vs. N. W. Mut. Life Ins. Co.*, 86 *Ill.*, 260; *Croskey vs. Coryell*, 2 *Wharton*, (*Pa.*,) 223.

From the very nature of this contract, it could, in no event, become important, how many bricks went into one building or whether more went into one than another. Nor was it requisite, to entitle the appellant to maintain its lien, that it should establish the fact that the bricks were actually used in the construction of the buildings or not, provided it was shown that under its contract with Spilman, it had delivered the bricks to be used in the erection of said buildings. *Greenway vs. Turner*, 4 *Md.*, 296; *Treusch vs. Shryock and Clark*, 55 *Md.*, 333; *Watts vs. Whittington, et al.*, 48 *Md.*, 357.

It has been very earnestly contended by the appellees that the cases of *Wilson & Son vs. Wilson, et al.*, 51 *Md.*, 159, and *Nickel and Widekind vs. Blanch and Codd*, 67 *Md.*, 456, heretofore decided by this Court, conclusively determined the law of this case. The facts, however, of each particular case must determine the propriety of the application of the principles of law, which ought to govern in such case, and in neither of the cases just quoted are the facts the same or similar to those to be found in the record of this appeal. In *Wilson & Son vs. Wilson,* *et al.*, the Court's decision was, that the proceedings to enforce the lien claim had not been taken in time, and

such was the decision in *Nickel vs. Blanch,* based in each case upon the fact that there was abundant proof showing that the only materials furnished, within six months prior to the laying of the liens in both cases, were furnished for and used in houses in which the right to lien had been waived. Suppose any such burden was imposed upon the appellant in furnishing the bricks for the buildings in question, how could it have discharged the obligation? It only contracted to furnish and deliver the bricks for the forty-seven buildings, and then its power to fulfil the contract was at an end. It had no right to direct how the bricks should be used, and it could have no possible means of ascertaining or of showing into what building or buildings the bricks had gone, or whether they had been used at all in any of the buildings. It fulfilled its contract when it delivered the bricks. If such a burden, under the contract, rested anywhere, it was with the appellee, Spilman, who had the means at his command of showing the exact truth in respect to the use to which the bricks had been put, but it was wholly immaterial to have required any such proof of the appellant, because the contract was a continuing undertaking, to furnish and deliver materials for the erection of forty-seven houses, and the bricks were furnished for all of the forty-seven houses generally. Until the appellant had supplied the bricks requisite to the construction of said buildings, it would not have been entitled to, and could not have claimed, a lien, as the contract was entire, and could not be made available by part performance.

2nd. It is contended by the appellees that the appellant, in taking mortgage securities on certain of the forty-seven lots included in the lien, which have been since released of the mortgages and of the lien, and in accepting the guarantee of George R. Clark to pay for five thousand dollars worth of bricks to be used in the

erection of said buildings, are inconsistent with the right to the mechanics' lien. In view of the provisions of the law relating to mechanics' lien (Code, Art. 63, sec. 3) we fail to see the force of the objection. The amount paid to Clark and the amount secured by the three mortgages could have, under the contract which we have been considering, no other effect than to reduce the gross amount due for the bricks furnished. It was of no consequence who paid for the bricks. If Spilman owned the property and contracted for the bricks, it did not affect the law of the case that Clark paid for the bricks. The testimony abundantly shows that the terms of sale of the bricks were, that Clark was to give his guarantee for the payment of five thousand dollars worth of bricks, and that Spilman was to give the appellant, as collateral security for the payment of three thousand dollars of the purchase money, three mortgages, each for the sum of one thousand dollars, and the balance due for the whole amount of bricks to be used in the erection of the forty-seven buildings was to be paid within a reasonable time thereafter. There is nothing in the terms of the contract inconsistent with the existence of the lien, nor is there anything in the contract which suggests an express, or even an implied, waiver of the lien. Parties may contract as they think proper respecting the manner in which payment for materials may be made, and they will not be considered as having waived their lien, unless they shall have expressly agreed to such terms as are inconsistent with the existence or enforcement of the lien, in which event the lien is expressly waived by the legal effect of such contract. This is what the case of *Willison vs. Douglas*, 66 *Md.*, 99, and the case of *Pinning Brothers vs. Skipper*, 71 *Md.*, 347, have settled as law, and in each case this Court had to deal with facts widely differing from each other, and in both cases wholly unlike the facts in this case.

3rd. Some discussion was had in the argument of counsel in this Court concerning the manner in which the appellant had made up its bill of particulars, and of the method which it had adopted in keeping its account of the bricks sold and delivered to the appellee, Spilman. A careful examination of both the bill of particulars and the account has failed to convince us that there is any substantial objection to either. Spilman himself, when the bills for bricks hauled were from time to time presented to him, made no objection, and when all the bricks had been delivered, a bill for the whole amount of bricks furnished was rendered to him, without intimation of any error in the account. As to the application of the credit, the same having been paid on general account, there ought to be little difficulty, since the decision of this Court in *Trustees of the German Lutheran Church, &c. vs. Heise & Co., et al.,* 44 *Md.*, 471-2. If there should be found any errors in the account, they can be corrected when the case reaches the auditor, whose duty it is to state a correct account. It follows from the views which we have expressed, that the Court below was in error in dismissing the bill; the decree must therefore be reversed, and the cause remanded.

*Decree reversed, with costs,*
*and the cause remanded.*

(Decided 18th November, 1892.)